UNITED STATES of America

v.

Andrew A. CAMPBELL, Lance Corporal
(E–3), U.S. Marine Corps

NMCCA 201200434
SPECIAL COURT-MARTIAL

U.S. Navy–Marine Corps Court
of Criminal Appeals

Sentence Adjudged: 19 June 2012.

30 May 2013

---

**Military Judge:** Maj Eric Emerich, USMC.

**Convening Authority:** Commanding Officer, 3d Battalion, 10th Marine Regiment, 2d Marine Division, Camp Lejeune, NC.

**Staff Judge Advocate's Recommendation:** Maj J.N. Nelson, USMC.

For Appellant: LCDR Nathaniel Gross, JAGC, USN.

For Appellee: LT Ian MacLean, JAGC, USN.

Before R.Q. WARD, B.L. PAYTON-O'BRIEN, J.R. MCFARLANE, Appellate Military Judges

## PUBLISHED OPINION OF THE COURT

PAYTON-O'BRIEN, Senior Judge:

A military judge sitting as a special court-martial convicted the appellant, pursuant to his pleas, of one specification of larceny of property over $500.00 in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. The appellant was sentenced to confinement for 75 days, reduction to pay grade E–1, a fine of $1,142.00, and a bad-conduct discharge. The convening authority approved the sentence as adjudged.

The appellant alleges a single assignment of error: that the military judge abused his discretion when he accepted the appellant's guilty plea to larceny on divers occasions of various goods of a value in excess of $500.00 where no single larceny exceeded $118.71.

After taking into consideration the record of trial, the pleadings of the parties, and oral argument, we find that the military judge did not abuse his discretion in accepting the plea to the aggregated specification. We conclude that the findings and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

## Background

The appellant's roommate, Private First Class (PFC) W, used the appellant's laptop computer to order food for delivery to the barracks at Camp Lejeune, North Carolina. In placing the order, PFC W's Navy Federal Credit Union debit card number was entered into the website on appellant's laptop. That account number was also saved on the appel-

lant's laptop. Subsequently, from May until October 2011, the appellant used PFC W's debit card number on over 50 separate occasions without authorization to order food from local restaurants for himself and others. The total amount of the appellant's charges to PFC W's debit card was $2,290.64,[1] however, each individual charge was less than $500.00, ranging from approximately $16.00 to approximately $118.00. The appellant committed one theft per day per restaurant, though on some days he ordered from more than one restaurant.

Initially, the Government charged the appellant with one larceny for each unauthorized transaction, resulting in 57 specifications. Through pretrial negotiations, however, the appellant agreed to plead guilty to an additional charge and single specification of larceny on divers occasions of an amount over $500.00. In addition to the sentence limitation, the Government agreed to withdraw and dismiss the original charge of larceny and its 57 specifications. The appellant subsequently pleaded guilty to this additional aggregate charge[2] and single specification and in return the Government withdrew the original charge and 57 specifications upon acceptance of the plea.[3] At trial, the parties agreed with the military judge that the maximum punishment was the jurisdictional maximum of a special court-martial.

The appellant now argues that the military judge abused his discretion by accepting his guilty plea to the specification alleging larceny in the aggregate value above $500.00. His argument is two-fold: one, since all the individual thefts were less than $500.00, calculating the maximum punishment based on their aggregated value was error; and two, he labored under a misapprehension of the maximum punishment.[4]

---

1. We note that the Stipulation of Fact incorrectly states the total of the unauthorized purchases is $2,284.64. Prosecution Exhibit 5 at 4.

2. The sole specification under the Additional Charge read: "In that [the appellant], U.S. Marine Corps, 3d Battalion, 10th Marine Regiment, 2d Marine Division, Camp Lejeune, North Carolina, did, on divers occasions, at or near Camp Lejeune, North Carolina, between on or about 19 May 2011, and on or about 18 October 2011,

steal various goods, of a value of more than $500.00, the property of multiple merchants."

3. The withdrawn Charge and specifications were dismissed by the convening authority upon pronouncement of the sentence.

4. The maximum punishment for a larceny of property under $500.00 is confinement for six months, total forfeitures and a bad-conduct discharge. The maximum punishment for larceny

## Analysis

■■■ We review the military judge's decision to accept the appellant's plea of guilty for an abuse of discretion. *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F.1996). We may set aside the guilty plea if the record of trial shows a substantial basis in law or fact to question the plea. *United States v. Irvin*, 60 M.J. 23, 24 (C.A.A.F.2004) (citing *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002)).

Although the Government originally charged the appellant with 57 specifications of larceny, the record indicates that the parties subsequently negotiated for the appellant to plead guilty to one "mega-specification" that combined the thefts into a single specification.[5] Likewise, this "mega-specification" aggregated the value of all thefts by alleging a total value in excess of $500.00. In exchange, the Government agreed to withdraw and dismiss the original charge and its 57 specifications. At trial, the appellant pleaded guilty in accordance with his pretrial agreement and did not object to the nature of this specification.[6]

The appellant now argues on appeal that since no single theft totaled $500.00 or more in value, he could not be found guilty of larceny of the greater value simply by aggregating all the larcenies into one specification. He cites to *United States v. Davis*, 36 C.M.R. 363 (C.M.A.1966) in support of his argument. In *Davis*, the accused obtained overpayments of pay on several different occasions from different finance officers. The Government charged Davis with a single specification of larceny over $50.00 by aggregating all the larcenies into one specification, thereby increasing the maximum punishment.[7] In reversing the Army Board of Review, the Court of Military Appeals held that a duplicitous specification alleging monies stolen from different locations on different dates are separate crimes, and the Government cannot aggregate the value of each larceny to thereby raise the maximum imposable punishment. *Id.* at 365.

Following *Davis*, the Army Court of Military Review (ACMR) decided *United States v. Poole*, 24 M.J. 539 (A.C.M.R.1987), *aff'd*, 26 M.J. 272 (C.M.A.1988). *Poole* was a bad check case in which the Government had charged the appellant with six specifications of wrongfully uttering 119 checks, with each specification containing numerous checks, a common charging practice known as "mega-specifications." None of the checks individually exceeded $100.00.[8] Poole pleaded guilty to 87 of these checks and the military judge calculated the maximum punishment based upon their aggregate value. Applying *Davis*, the ACMR held that the military judge erred by failing to calculate the maximum punishment by the dollar amount of the largest check in each specification. *Id.* at 542. Although affirming on other grounds, the Court of Military Appeals tacitly accepted the service court's maximum punishment calculation. 26 M.J. at 273.

After *Poole*, the Court of Appeals for the Armed Forces (CAAF) decided *United States v. Mincey*, 42 M.J. 376 (C.A.A.F.1995).

of property $500.00 or more, is confinement for five years, total forfeitures and a dishonorable discharge. MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.), ¶¶ 47e(1)(b) and (d).

5. The appellant stipulated to 53 of the originally charged 57 thefts.

6. The appellant was arraigned on the original charge on 26 March 2012. Post-arraignment, the pretrial agreement was drafted and signed by the appellant and his counsel on 10 April 2012. The additional charge was preferred and referred to trial thereafter. The additional charge was referred to special court-martial with special instructions in Block 14: "[t]o be tried in conjunction with Charges preferred on 23 February 2012." On 26 June 2012, which was the date of trial, the appellant was re-arraigned on the original charge and arraigned on the additional charge, without objection to the joinder of the additional charge.

7. In 1964, the maximum punishment for a larceny of more than $50.00 was five year's confinement, while the maximum punishment for larceny of $50.00 or less was only one year of confinement. *See* Table of Maximum Punishments, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1951 ed.).

8. At the time of Poole's conviction, the maximum punishment for violating Article 123(a), UCMJ, was a bad-conduct discharge and confinement for six months for amounts of $100 or less, and a dishonorable discharge and confinement for five years for amounts more than $100.00.

Airman Mincey was charged with two "mega-specifications" under Article 123a alleging a total of 18 bad checks. Drawing on RULE FOR COURTS-MARTIAL 1003(c)(1)(A)(i), MANUAL FOR COURTS-MARTIAL, UNITED STATES 1984 (1994 ed.), CAAF held that when pleaded in this manner, "the maximum punishment is calculated by the number and amount of the checks as if they had been charged separately, regardless whether the Government correctly pleads only one offense in each specification or whether the Government joins them in a single specification...." *Id.* at 378. Thus, whether bad checks are charged individually or in the aggregate, CAAF counseled that "[w]e look to the offenses of which an accused has been convicted to determine the punishment." *Id.* Since *Mincey*, the service courts of appeal have split on the issue of "mega-specifications" and calculating maximum punishment.

The ACMR has taken the view that if the Government combines multiple larcenies into one specification, the higher penalty for such larcenies would be available only if one item itself is greater than the threshold amount or if the value of several items taken at substantially the same time and place are greater than the threshold amount. *United States v. Rupert,* 25 M.J. 531, 532 (A.C.M.R.1987). In *Rupert,* the accused pleaded guilty to a single larceny specification alleging theft of multiple items of military property during a 17–month period, of an aggregate value in excess of $100.00. The ACMR determined that the record failed to show that the value of any single item stolen or the combined value of several items stolen at substantially the same time exceeded $100.00. Citing *Davis,* 36 C.M.R. at 365, the ACMR held "that the larcenies of property from different locations on different dates are separate crime and cannot be combined into one specification as a single larceny in order to aggregate the

value ... and thereby raise the maximum imposable punishment." In 1997, the Army Court of Criminal Appeals (ACCA) applied the same reasoning to automated teller machine (ATM) theft in *United States v. Christensen,* 45 M.J. 617 (Army Ct.Crim.App. 1997).[9] ACCA has followed this reasoning in subsequent cases.[10]

The Air Force Court of Criminal Appeals (AFCCA), however, applies different reasoning. In their view, the maximum punishment is calculated by analyzing the evidence to determine if the Government can prove separate acts of larceny. If either the value of one theft or checks exceeds the threshold amount, or if the Government could allege and prove separate specifications with punishment that combined equal or exceed the maximum punishment for the aggregate specification, then the greater maximum punishment is authorized. *United States v. Oliver,* 43 M.J. 668, 669 (A.F.Ct.Crim.App.1995). Oliver was convicted of wrongfully using his roommate's telephone credit card by making over $1,300.00 in long distance calls. The Government charged the long distance telephone calls as one specification of theft of services, which the military judge concluded was of "a value more than $100.00" resulting in the maximum of five years confinement. No one individual telephone call cost more than $100.00. Oliver challenged the military judge's calculation of the maximum punishment on appeal. The AFCCA determined that using "multi-spec" pleading promotes judicial economy by streamlining charge sheets and trial proceedings. Since the Government could plead and prove separate specifications with punishments greater than the maximum punishment for the one aggregate specification, AFCCA found that the aggregate pleading actually benefitted Oliver and the trial judge correctly calculated the maximum punishment. *Id.* at 670. AFCCA has applied this reasoning to credit card

---

9. Christensen used another soldier's ATM card over a six-day period to make withdrawals from the soldier's bank account for a total of $180.00. ACCA set aside the conviction for larceny in excess of $100.00 because the record failed to reveal any single larceny of more than $100.00 or multiple larcenies committed at substantially the same time and place with a combined value in excess of $100.00. Instead, the court affirmed a lesser finding of larceny of less than $100.00.

10. ; *United States v. Harding,* 61 M.J. 526 (Army Ct.Crim.App.2005), *aff'd,* 64 M.J. 179 (C.A.A.F. 2006); *United States v. Munoz,* 2011 WL 339573, 2011 CCA LEXIS 11 (Army Ct.Crim.App. 31 Jan. 2011) (per curiam), *rev. denied,* 70 M.J. 92 (C.A.A.F.2011); *United States v. Wood,* 2008 WL 8084975, 2008 CCA LEXIS 525 (Army Ct.Crim. App. 24 Sep. 2008) (per curiam); *United States v. Boston,* 2005 WL 6520480, 2005 CCA LEXIS 468 (Army Ct.Crim.App. 2 Jun. 2005).

fraud cases, larceny cases, and ATM theft cases.[11]

While we are mindful of the split in authority among the service courts, we are persuaded by the AFCCA's line of cases and their reasoning. Our analysis is also guided by CAAF's holding in *Mincey that* focuses on R.C.M. 1003(c)(1)(A)(i) authorizing punishment based on "each separate offense, not for each charge." Finally, as our AFCCA brethren stated, "[p]leading multiple thefts ... in one specification promotes judicial economy by streamlining charge sheets and trial proceedings...." *Oliver,* 43 M.J. at 670.

 Applying the rationale employed in *Oliver* and *Mincey,* we hold that if the maximum authorized punishment for the individual larcenies had they been charged as separate specifications is equal to or exceeds the maximum punishment for the "mega-specification" using the aggregate value, then we will apply the "greater than $500.00" maximum punishment. Similar to the CAAF's analysis in *Mincey,* we will determine the maximum punishment by the number of offenses as if they had been charged separately, regardless of whether they were consolidated into one specification for ease of court martial processing.

Here, the appellant stipulated and testified to 53 separate larcenies, each well below the $500.00 threshold. Prosecution Exhibit 5. If each of these larcenies were separately charged, the appellant would face a maximum penalty of 23.5 years of confinement and a dishonorable discharge. Charged as a single aggregate specification, the appellant faced a maximum of five years confinement and a dishonorable discharge. However, since he pleaded guilty at a special court-martial, he further decreased his punitive exposure to one year confinement and a bad-conduct discharge. R.C.M. 201(f)(2)(B).

While the appellant argues that *Mincey* does not extend beyond the bad check realm, we do not interpret *Mincey* so restrictively, particularly in light of the advances in electronic banking in today's world. We can perceive no meaningful distinction between yesterday's bad check cases and today's debit card cases as far as charging and maximum punishment practices go.

 Even if we were to find error, under the circumstances of this case, the aggregation of the separate larcenies was an appropriate charging practice. We can discern no prejudice to the appellant in this case. In determining whether the appellant suffered prejudice, we take note of "all the circumstances of the case presented by the record." *United States v. Hemingway,* 36 M.J. 349, 353 (C.M.A.1993) (citations and internal quotation marks omitted); *see also* Art. 59(a), UCMJ.

Prior to entering pleas, the appellant entered into a pretrial agreement. In exchange for a guilty plea to the single specification aggregating the multiple larcenies, he bargained for a maximum confinement of four months and the Government would withdraw and dismiss the 57 individual larceny specifications. The four-month confinement cap represents a "truly substantial inducement regardless [of] the legal maximum...." *Id.* The appellant raised no objection at trial to the duplicious pleading. Had he done so, the sole remedy would have been severance under R.C.M. 906(b), thus returning him to the status quo prior to his pretrial agreement: facing 57 specifications of larceny. Under these circumstances, we find the Government's aggregated pleading benefited the appellant and we find no prejudice. *Oliver,* 43 M.J. at 670. Consequently, we conclude the military judge did not abuse his discretion in accepting the appellant's plea to the aggregated specification.

### Conclusion

The findings and the sentence as approved by the convening authority are affirmed.

Senior Judge WARD and Judge McFARLANE concur.

11. *See United States v. Niverba,* 2007 WL 4259163, 2007 CCA LEXIS 522 (A.F.Ct.Crim. App.2007); *United States v. Babb,* 2007 WL 2792588, 2007 CCA LEXIS 410 (A.F.Ct.Crim. App.2007); *United States v. Raasch,* 2005 WL 2875113, 2005 CCA LEXIS 342 (A.F.Ct.Crim. App.2005).